DEVINE, P. J.
 

 Respondents Earl Vounker and A. E. Cahlan, partners doing business in Nevada under the firm name of Earl E. Vounker Enterprises, were awarded summary judgment against appellants Reseda Manor, a corporation, and Sam Len, on a promissory note. The note was for the purchase price of land in Nevada, and the land was hypothecated by deed of trust to secure the debt of $95,353. The note was executed for the corporation, Reseda Manor, by Sam Len, president, as maker, and on the same day a guaranty on the reverse side was signed by Sam Len.
 

 The complaint alleges the execution of the note and guaranty, exercise of option to accelerate payment, nonpayment of any part of principal or interest, execution and recording of the deed of trust and the foreclosure of a first deed of trust by First Western Savings and Loan Association whereby “the lien or charge of plaintiffs’ deed of trust thereon was completely extinguished and destroyed.” Appellants’ answer admits the execution of the instruments, raises certain defenses which are not relied on in this appeal, and pleads that the action is for deficiency judgment on a purchase money obligation and that it is barred by section 580b of the Code of Civil Procedure.
 

 Affidavits for summary judgment were made by each of the two partners who are plaintiffs. The affidavits state formal matters about execution and nonpayment, deny matters alleged in the answer as to a defense not presently relevant, and say that Shenandoah Square, Inc., a corporation, purchased the hypothecated property at the foreclosure sale under the first deed of trust.
 

 Sam Len filed his declaration in opposition, saying: Plaintiffs were the owners of unimproved land in Nevada, and they represented that they would be able to obtain a loan in amount sufficient to enable Reseda Manor to purchase it and to construct 34 four-unit apartment buildings on it without any cash investment. Plaintiffs solicited appellant Len to form a corporation to apply for such a loan from the First Western Savings and Loan Association of Las Vegas. Cahlan stated to Len that he would subdivide and sell the land to Reseda Man- or and would accept in payment therefor the amount of the
 
 *429
 
 proceeds o£ a construction loan available as a “land draw” and that he would take back a second deed of trust, which was to be paid when the buildings were completed and the project refinanced. Cahlan personally negotiated the loan, which was for over $1,000,000. Plaintiffs were to take a purchase money mortgage with release clauses, and this mortgage would be subordinate to the loan from First Western. Cahlan represented to Len that there would be no personal risk of loss since plaintiffs were taking a purchase money mortgage and that, if the buildings did not sell, plaintiffs would take them over since they could use the depreciation on other new construction.
 

 Cahlan further represented to Len that he had checked out the deal with his son, an attorney at law in Nevada, and stated 1 ‘ there was nothing to worry about because the law was just like in California in regard to personal liability on purchase money deeds of trust.” Len was not represented by counsel, and he relied on Cahlan’s representation that there would be no personal liability in the event the venture was unsuccessful. Cahlan also stated that a personal signature on the note would not change anything, because the note would always be a “purchase money” note, but that the bank wanted a personal signature instead of a California corporation so that the note could be used as collateral.
 

 Cahlan also represented that the lots would be completed for building within one month, fully graded, with streets and curbs. But delays occurred, causing Reseda Manor to sustain losses of interest and to suffer competitively when the real estate market underwent reversals later that year.
 

 Finally, Len’s declaration states (on information and belief) that the purchaser at the foreclosure sale, Shenandoah Square, Inc., was the instrumentality of plaintiffs, and that plaintiffs are in possession of the property, pursuant to the understanding with defendants at the time the transaction was entered into.
 

 A reply affidavit was filed by Cahlan. He denies having represented to Len that there would be no risk, that Len’s personal signature would not mean anything, that the bank wanted it as collateral, and, in particular, that he had stated to Len that he had cheeked the law with his son and that it was the same as California law. Len’s declaration that Shenandoah Square, Inc. was the “instrumentality of plaintiffs” is not denied.
 

 The court granted the motion to strike the answer and
 
 *430
 
 awarded summary judgment against the corporate defendant and the individual defendant, Len, in amount $102,027.11 principal, $13,946.47 interest, and $2,910.27 counsel fees.
 

 Code of Civil Procedure Section 580b
 

 That the loan created a purchase money obligation is conceded by respondents, at least for the purposes of this appeal. Section 580b provided, in part, when this action was commenced in 1964: “No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property.” But, respondents contend, and the trial judge no doubt agreed, section 580b does not apply where the loan was incurred and made payable in Nevada and the land is situated in Nevada. It is strange, but it seems to be the fact, that this question has not been before the courts in California and that there is but little consideration of a like problem in other states
 

 The statute is positive in its terms. It forbids deficiency judgments. On what theory, then, could a summary judgment for plaintiffs for deficiency judgment against a maker of the note be sustained? (Whether Len may have been, in fact, a maker is discussed below; Reseda Manor certainly was a maker.) Respondents propose several theories, but we are not convinced by them that the plain terms of the statute can be avoided.
 

 First, respondents point out that section 580b was one of eight sections which were contained in a single chapter (Stats. 1933, ch. 642) as part of moratoria legislation, and that because the seven other sections all relate to California lands only, section 580b must be held to do so. The other sections are: amendment to Civil Code section 2924 regarding notices of default (three-month waiting period for default sales) ; section 2924b (requires recordation of requests for notices of foreclosure sales) ; section 2924c (reinstatement of deeds of trust) ; Code of Civil Procedure section 580a (fair market value limitation on recovery of deficiency judgments); section 580c (limits attorneys’ and trustees’ fees) ; section 725a (gives right to foreclose deeds of trust judicially); section 2924% (prohibited deficiency judgments between September 1933 and September 1935).
 

 But the explicit terms of section 580b have more meaning than does the association of this statute with others at the
 
 *431
 
 time of its passage. Besides, these several statutes have taken on a character of their own in the third of a century since their origin. Many have been amended, including section 580b, as appears below.
 

 Second, respondents urge that a statute having to do with foreclosures and sales within this state cannot be given extraterritorial effect. But section 580b does not have to do with foreclosures or trustees’ sales directly. It has nothing to do with the procedure effecting judicial foreclosure or trustee’s sale. Indeed, by an amendment made in 1949 (Stats. 1949, ch. 1599, p. 2846), there was added to the proscription against deficiency judgments after sale under purchase money deeds of trust and mortgages, a like interdiction of deficiency judgment for failure of the purchaser to complete his contract of sale. Thus, section 580b is not
 
 directly
 
 concerned with the creditor’s act of pursuing his remedies by foreclosure or sale, and applies, in contract of sale eases, where there has been simply default in payment by the purchaser.
 

 The California statute differs in this respect from those of other states which were applicable in cases cited by respondents. Thus, in
 
 McGirl
 
 v.
 
 Brewer,
 
 132 Ore. 422 [285 Pac. 208, 280 Pac. 508], the statute of the forum state, the State of Oregon, read: “ ‘When judgment or decree is given for the foreclosure of any mortgage, hereafter executed, to secure payment of the balance of the purchase price of real property, such judgment or decree shall provide for the sale of the real property, covered by such mortgage, for the satisfaction of the judgment or decree given therein, and the mortgagee shall not be entitled to a deficiency judgment on account of such mortgage or note or obligation secured by the same. ’ ” (285 Pac. at p. 210; Ore. Laws, § 426.) Obviously, this referred to Oregon foreclosures only. There was no statute containing a general proscription of deficiency judgments of the nature of our section 580b.
 

 In
 
 Reconstruction Finance Corp.
 
 v.
 
 Mercury Realty Co.,
 
 97 F.Supp. 491, it was held that where the loan had been incurred and the property was located in Alabama, where deficiency judgments were permitted, the debtor, in Michigan, could not take advantage of that statute which provided a limitation on deficiency judgments to the difference between the debt and the fair market value at the time of foreclosure sale and not the actual amount obtained. Here, again, the statute was plainly part of the foreclosure procedure.
 

 The case of
 
 Felton
 
 v.
 
 West,
 
 102 Cal. 266 [36 P. 676], which
 
 *432
 
 held that California’s “one action” statute, Code of Civil Procedure section 726, does not apply where the property is in another state, is cited by respondents, but the same distinction is present. The court said: “We cannot assume that the authors of this legislation attempted to establish a procedure for the foreclosure of mortgages upon realty situated in other states” (p. 270). Section 580b does not purport to do anything of that sort.
 

 In
 
 Provident Sav. Bank & Trust Co.
 
 v.
 
 Steinmetz,
 
 270 N.Y. 129 [200 N.E. 669], the “fair market value” statute of New York was held inapplicable to an action brought on a debt incurred in Florida because the statute referred to foreclosure of mortgages and “an action to foreclose a mortgage must relate to property in this state” (p. 670).
 

 In
 
 Connecticut Mut. Life Ins. Co.
 
 v.
 
 Hansell,
 
 194 Minn. 41 [259 N.W. 390], a Minnesota statute forbidding deficiency judgments until the period of redemption “ ‘as allowed by existing law or as extended under the provisions of this Act” (p. 391) did not apply to a land-secured note issued and payable in Iowa. Plainly, the Minnesota statute was not general in application. The limitation on deficiency judgments was tied to a Minnesota period of redemption.
 

 Choice of Laws
 

 We have considered above whether section 580b can be applied to the transaction; here, we discuss whether it should be. Respondents contend that principles relating to conflict of laws, or to use the more irenie term, choice of laws, make it right to choose the Nevada law.
 

 Preliminarily, we make two observations: First, that because this is a summary judgment case, we must regard the declaration of Len as stating the true facts.
 
 (Eagle Oil & Refining Co.
 
 v.
 
 Prentice,
 
 19 Cal.2d 553 [122 P.2d 264].) Second, although respondents in their brief assume that it is established that they could not have acquired jurisdiction in Nevada for a deficiency judgment against Reseda Manor or Len, there is nothing in the record to show this. If such judgment had been obtained, it would have to be recognized in California under the full faith and credit clause.
 
 Sanpietro
 
 v.
 
 Collins,
 
 250 Cal.App.2d 203 [58 Cal.Rptr. 219].)
 

 Respondents argue that all of the significant contacts of the transaction are in Nevada—there the note was made, there it is payable, and there is the land which secured it. But we believe that there is a splitting of contacts between the two states which justifies a division of the applicable laws. The
 
 *433
 
 “real property” aspects have been subject to the laws of Nevada. The validity of the deed of trust, the incorporation of certain covenants by reference, the means of foreclosure, are all subject to the law of that state. By the law of Nevada, appellants’ shortlived title was wiped out. Under the law of that state, an instrumentality of respondents acquired title after the bank’s foreclosure.
 

 But there are personal aspects to the transaction. Reseda Manor is a California corporation. This state has an interest in its solvency. It is possible, although Len’s affidavit on this subject is not clear, that Reseda Manor is the corporation which respondents solicited him to form, and if it was, the California contact would be still stronger. In any event, respondents knew they were dealing with a California corporation. Len resides in California, and this state is interested in his solvency. We do not mean by this that California has an interest in protecting its residents, corporate or individual, from paying their debts in general, but only that in one particular kind of transaction, land sales, where the land is given as security for the debt to the vendor, this state has an interest in protecting purchasers from judgments for deficiency. The statute forbids such judgments “in any event.” But there is a particular reason for finding California contacts here. According to Len’s declaration, Cahlan told him that he had checked with his son, a lawyer (thus representing that he had superior knowledge), and had found that the law of Nevada was the same as that of California in respect of deficiency judgments. We do not regard the admissibility of this oral statement as related to estoppel in general (which was not pleaded) or to fraud, or to attempts to vary the terms of a written instrument. On the subject of choice of laws, however, where respondents contend that the law of the state where they seek to recover should not apply because superior contacts of the state of situs exist, we deem it relevant to consider the statement alleged (and accepted by us, at this stage) to have been made by the prospective creditor.
 

 Respondents cite
 
 Bernkrant
 
 v.
 
 Fowler,
 
 55 Cal.2d 588 [12 Cal.Rptr. 266, 360 P.2d 906], wherein it was held that the California statute of frauds was not a good defense to an action brought in California upon an oral promise made in Nevada to provide for the cancellation of an indebtedness owed to decedent. There are substantial differences between that case and this. The statute of frauds is substantive law. To have applied the California statute of frauds in
 
 Bernkrant
 
 
 *434
 
 would have been virtually to declare the contract itself invalid in California. Section 580b does not declare any contract, whether made in California or elsewhere, whether secured by California or other land, to be invalid. At the inception of purchase money security transactions, the contracts are valid, and they remain so. But the creditor may not invoke California law in event of deficiency because deficiency judgments are forbidden 1 ‘in any event” to vendors.
 

 In
 
 Bernhrant,
 
 it could not be ascertained from the record where the promisor resided. The court noted that if he did reside in California, this might have alerted the parties to California law, but that even so, California would have no interest in applying its statute of frauds unless the promisor remained a resident of this state at the time of his death. Reseda Manor, in our ease, was a California corporation. The parties knew it would have to remain here. The statement of Cahlan to Len shows that he was perfectly alert to California law on the subject and to Len’s anxious concern about it.
 

 Other Issues
 

 Respondents point out that Len signed as a guarantor; hence he is not entitled to the benefits of section 580b, even if the maker were.
 
 (Bargioni
 
 v.
 
 Hill,
 
 59 Cal.2d 121, 123 [28 Cal.Rptr. 321, 378 P.2d 593];
 
 Heckes
 
 v.
 
 Sapp,
 
 229 Cal.App.2d 549, 553 [40 Cal.Rptr. 485].) But there is an issue to be tried, which depends in part on a factual determination, namely, whether Len really was a guarantor. Len alleges that respondents solicited him to form a corporation. He declares that Cahlan told him his signature as guarantor was merely for use as collateral and that the note would remain one for purchase money. It is possible that Len was not truly a guarantor.
 
 (Valinda Builders, Inc.
 
 v.
 
 Bissner,
 
 230 Cal.App.2d 106 [40 Cal.Rptr. 735];
 
 Riddle
 
 v.
 
 Lushing,
 
 203 Cal.App.2d 831, 835 [21 Cal.Rptr. 902].)
 

 Respondents argue that the rule of
 
 Brown
 
 v.
 
 Jensen,
 
 41 Cal.2d 193 [259 P.2d 425], that section 580b applies where the security has been lost by foreclosure of a senior deed of trust, has been virtually nullified by
 
 Roseleaf Corp.
 
 v.
 
 Chierighino,
 
 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97], in which a deficiency recovery was allowed where the deed of trust was on other property than that for which the loan was taken. But the Supreme Court has not overruled
 
 Brown
 
 v.
 
 Jensen.
 
 It stands as the expression of law on this subject.
 
 (Lange
 
 v.
 
 Aver,
 
 241 Cal.App.2d 793, 799 [50 Cal.Rptr. 847].)
 

 
 *435
 
 The summary judgment is reversed. The order striking the answer of the defendants is set aside.
 

 Rattigan, J., and Christian, J., concurred.
 

 Respondents’ petition for a hearing by the Supreme Court was denied December 20, 1967. Peters, J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.