PARADISE LAND AND CATTLE COMPANY, a co-partnership, Plaintiff–Appellee,

v.

McWILLIAMS ENTERPRISES, INC., a California corporation, Defendant–Appellant.

No. 91–15049.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 1992.

Decided March 30, 1992.

**1464**

Scott R. Shewan, Thomas, Snell, Jamison, Russell & Asperger, Fresno, Cal., for defendant-appellant.

Michael D. Tracy, Law Offices of Archibald M. Mull, Sacramento, Cal., for plaintiff-appellee.

Before GOODWIN, FARRIS and POOLE, Circuit Judges.

GOODWIN, Circuit Judge:

The seller of a Nevada ranch, Paradise Land & Cattle Co. ("Paradise"), sued to enforce a guaranty made by one of the buyers, McWilliams Enterprises, Inc. ("Enterprises"). The district court granted summary judgment in favor of Paradise.

Enterprises appeals, contending that it was entitled to California's statutory protection from deficiency judgments on purchase-money obligations secured by real property. We affirm.

In the 1970s, Herb McWilliams and his son Don were California cattle ranchers. The McWilliamses conducted their ranching operations through two corporations, Enterprises and McWilliams Land & Cattle Co., Inc. ("Land & Cattle"). Enterprises' only shareholders were Herb (55%) and a trust in part for the benefit of Don (45%). During the same period, Paradise was the owner of a Nevada ranch. In the early 1980s, the McWilliamses decided to buy the Paradise ranch.

In late 1981, the parties signed an option contract. Under the contract, Enterprises and Land & Cattle acquired an option to purchase the Paradise ranch for $2,600,000. Part of the purchase price was to be in the form of a note signed by Enterprises and Land & Cattle in favor of Paradise, secured by a deed of trust in the ranch. Pursuant to the 1981 agreement, Enterprises and Land & Cattle took possession of the ranch and began conducting operations.

In early 1982, Enterprises and Land & Cattle exercised their option. While the deal was in escrow, the McWilliamses decided to seek a modification of the transaction which would provide Herb with tax benefits. Under their proposal, the type and amount of consideration would remain the same, but Herb and Don as individuals would become parties to the transaction. Instead of Enterprises and Land & Cattle, Herb and Don individually would sign the purchase money note in favor of Paradise secured by the ranch. Enterprises would still contribute land and cash. Paradise agreed to these changes upon one condition: Enterprises would guarantee the McWilliamses' payment under the note to Paradise. For some reason not made clear in the record, the guaranty also would be secured by a junior deed of trust in the ranch.

At the time of the deal, Enterprises listed a net worth of roughly $3.4 million. Counsel for Enterprises apparently did not discuss the guaranty with his clients.

When the paperwork was complete, the parties had created a somewhat complex transaction. Four individuals and entities—Herb, Don, Enterprises, and Land & Cattle—had purchased the Paradise ranch for $2,600,000. The purchase price was made up of: (1) $900,000 of debt held by Paradise, assumed by Herb and Don, and secured by a first deed of trust in the ranch; (2) roughly $1.1 million in the form of a note signed by Herb and Don in favor of Paradise, secured by a second deed of trust in the ranch; and (3) the remainder in cash and land provided by Enterprises and Land & Cattle. In addition, Enterprises guaranteed the McWilliamses' payment of the note, with the guaranty secured by a third deed of trust in the ranch. Ownership of the ranch was split between Herb and Don (61.02%), Enterprises (19.23%), and Land & Cattle (19.75%).

For running the new McWilliams ranch, the McWilliamses formed yet another legal combination—a partnership named McWilliams Ranches whose partners were the four entities involved in the Paradise deal. The ranching operations soon failed. After the McWilliamses defaulted on the first note on the ranch, its holder, Connecticut General, foreclosed. The proceeds of the foreclosure sale were insufficient to satisfy Connecticut General's first lien. Paradise, still holding the next junior lien, saw its security wiped out.

Paradise subsequently brought this diversity action against Enterprises to recover on the corporate guaranty in federal district court in California. Applying California law, the court awarded Paradise summary judgment.

Enterprises' only argument on appeal is that California Code of Civil Procedure § 580b bars Paradise from recovering under the guaranty. Section 580b provides in pertinent part: "No deficiency judgment shall lie in any event after a sale of real property ... under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property...."

■ It is well-settled that section 580b applies to purchase-money obligations in

real property transactions in which the obligation is secured by the purchased property. *Spangler v. Memel*, 7 Cal.3d 603, 102 Cal.Rptr. 807, 498 P.2d 1055 (1972); *Palm v. Schilling*, 199 Cal.App.3d 63, 244 Cal. Rptr. 600 (1988). For example, in this case, section 580b covers Herb and Don's obligation on their note to Paradise. However, section 580b does not apply to guaranties of such obligations. *Katz v. Haskell*, 196 Cal.App.2d 144, 16 Cal.Rptr. 453 (1961); *Heckes v. Sapp*, 229 Cal.App.2d 549, 40 Cal.Rptr. 485 (1964).

This case differs from the typical section 580b guaranty case in two important respects. In the typical case, the guarantor is a third party. In this case, however, the guarantor, Enterprises, was a 19.23 per cent co-purchaser of the property, and the guaranty was secured by Enterprises' interest in that property. The question, then, is whether section 580b applies to a guaranty given under these circumstances.

Enterprises makes two arguments: (1) section 580 directly applies because the guaranty was secured by an interest in the land purchased; (2) the guaranty was a "sham." Enterprises concludes by proposing new California law.

## I. *The Secured Guaranty*

■ Enterprises argues that section 580b applies to its guaranty because section 580b applies to purchase-money obligations secured by the purchased property and because its guaranty is such an instrument. Enterprises is correct on the law, *see Brown v. Jensen*, 41 Cal.2d 193, 198, 259 P.2d 425 (1953), and correct on the fact that the guaranty in this case is an obligation secured by the purchased property. However, Enterprises cannot demonstrate that the guaranty is a *purchase-money* obligation.

In attempting to claim purchase-money status for the guaranty, Enterprises points to section 580b's language, and the rationale behind excluding guaranties from section 580b's reach.

Enterprises first argues that the guaranty comes directly under the language of section 580b. Enterprises insists that the guaranty represents an indebtedness for the "balance of the purchase price" under section 580b. This position is belied by the record. The guaranty states:

GUARANTY given by McWilliams Enterprises, Inc. ..., to induce the acceptance by Paradise Land & Cattle Company ... of a promisory note in the amount of $1,174,856.48 ... by Herb McWilliams and Donald McWilliams.

1. Obligation. In consideration of the loan made upon such note, the undersigned hereby unconditionally guarantees to Paradise ... that all sums stated therein to be payable on such note shall be promptly paid in full....

Pursuant to the transaction, Herb and Don, but not Enterprises, signed the purchase-money note secured by the second deed of trust in the ranch. On the other hand, Enterprises, but not Herb and Don, signed the guaranty. The only purchase-money Enterprises contributed was in the form of land and cash. The purchase price of the Paradise ranch did not include any indebtedness by Enterprises; the guaranty did not purport to serve as part of the purchase price. Enterprises cannot now convert the guaranty into a purchase-money obligation merely by insisting that it is.

■ Enterprises' second contention in favor of direct section 580b application is that the rationale for placing guaranties beyond the reach of section 580b does not support the guaranty in this case. Guaranties are not covered by section 580b because they serve as "additional security"—security in addition to the security underlying the purchase-money obligation. *Roberts v. Graves*, 269 Cal.App.2d 410, 417, 75 Cal. Rptr. 130 (1969).

Enterprises claims that the security behind Herb and Don's note and that behind Enterprises' guaranty are the same: the ranch. This analysis, however, fails to consider the way in which Enterprises itself chose to set up the transaction. Under the deal, Herb and Don collectively took a 61.02% undivided interest in the ranch; Enterprises took a 19.23% undivided interest. Even though the deeds of trust associated with the note and with the guaranty referred to the Paradise ranch as a whole, this did not give the signatories any greater legal rights than they possessed. Enti-

ties can only encumber as security the property which they own. *Hoppe v. Hoppe,* 104 Cal. 94, 95, 37 P. 894 (1894). Because the security for the note and for the guaranty represented separate interests in the Paradise ranch, the guaranty did indeed provide "additional security."

The district court did not err in finding that section 580b did not directly cover the guaranty.

## II. *"Sham" Guaranties*

■ Even if section 580b does not directly apply to the guaranty, Enterprises argues that it should apply because the guaranty was a "sham." Enterprises contends that the district court should have at least permitted a trial on this issue.

California law does not define "sham" guaranties. The cases which have found a guaranty to be a sham, and upon which Enterprises relies, do not enunciate a test but instead mention certain facts and conclude that the guarantor was actually the true purchaser-debtor. In order to determine which of these facts was central to the disposition of the cases, we now turn to the purposes of section 580b.

Section 580b was part of a group of Depression-era statutes which were enacted to protect purchasers of real property. The section serves two primary purposes. First, barring deficiency judgments on purchase-money secured obligations discourages sellers from overpricing real property. Second, section 580b serves to prevent the aggravation of an economic downturn by limiting the purchaser's loss to her purchased land thus protecting her from personal liability. *See Roseleaf Corp. v. Chierighino,* 59 Cal.2d 35, 42, 27 Cal.Rptr. 873, 378 P.2d 97 (1963).

All four of the sham guaranty cases upon which Enterprises relies have at least two facts in common. First, they all involved a guarantor who is an individual. *In re Wilton–Maxfield Management Co.,* 117 F.2d 913, 914 (9th Cir.1941); *Younker v. Reseda Manor,* 255 Cal.App.2d 431, 432, 63 Cal.Rptr. 197 (1967); *Valinda Builders, Inc. v. Bissner,* 230 Cal.App.2d 106, 108, 40 Cal.Rptr. 735 (1964); *Riddle v. Lushing,* 203 Cal.App.2d 831, 833, 21 Cal.Rptr. 902 (1962). Second, the purchaser-debtor in each case was a "dummy" controlled by the guarantor, possessing no real interest in the purchased property. *Wilton–Maxfield,* 117 F.2d at 914 (purchaser-debtor was "dummy" individual with no real interest in the property); *Younker,* 255 Cal. App.2d at 438, 63 Cal.Rptr. 197 (purchaser-debtor corporation allegedly formed solely for the purpose of the transaction); *Valinda,* 230 Cal.App.2d at 110, 40 Cal.Rptr. 735 (shell corporation formed for purposes of the transaction); *Riddle,* 203 Cal.App.2d at 833, 21 Cal.Rptr. 902 (purchaser-debtor was partnership; guarantors were the partners).

These two facts are relevant to the purposes behind section 580b. One of those purposes concerns the harmful effect of unlimited personal liability in times of economic downturn. Finding an individual guarantor to be the true purchaser-debtor is consistent with this concern. The concern is not as strong where the guarantor is a corporation whose owners are protected by the central feature of corporations: limited liability. Even more relevant to the purposes of section 580b are factual scenarios in which the purchaser-debtor is a "dummy." Permitting avoidance of section 580b through such a facile setup would nullify the central purposes of the section. Would-be purchasers with little bargaining power, who are by definition those most subject to over-pricing, could be persuaded to act as the nominal guarantor, thereby negating section 580b.

The "sham" guaranty cases upon which Enterprises relies do not help it. In this case, the guarantor is a corporation, not an individual. More importantly, for the purposes of section 580b and this transaction, neither Herb, Don, nor Enterprises is a "dummy." Enterprises is a long-standing corporation of substantial assets. Herb, Don, Enterprises, and Land & Cattle each purchased separate undivided interests in the Paradise ranch. Enterprises contributed land and cash. Herb and Don contributed, presumably, their ranching expertise.

Finally, Enterprises contends that this case presents a new type of "sham" guaranty situation because of Enterprises' role as co-purchaser and the underlying facts of

the transaction. Granting Enterprises' request to treat the guaranty in this case as a sham of its own confection would cut a substantial swath through the principle that section 580b does not cover guaranties. All of the sham guaranty decisions concerned "straw-man" setups and at least an implication that the object of the setup was to avoid section 580b. These considerations lie at the heart of those cases.

In this case, there is no straw-man and no evidence that the parties contemplated section 580b. Enterprises concedes that it was replaced as primary purchaser at the suggestion of its own counsel. Only after the suggestion was made did Paradise ask that Enterprises act as guarantor. Moreover, counsel for Enterprises not only failed to discuss the guaranty with his clients before they signed it, but he does not even remember his conversation with counsel for Paradise concerning the guaranty. The district court noted that "the McWilliams' may have some sort of claim against [their counsel]" related to the transaction. We express no opinion on that point, but Enterprises' effort to avoid its undertaking by crying "sham" is unpersuasive.

### III. *Enterprises' Novel Theories*

▇▇ Dissatisfied with the current state of California law, Enterprises invites this court to expand the scope of section 580b's application. First, Enterprises suggests a "transactional instrumentality" rule. According to this rule, viable, non-"dummy" corporations controlled by the purchaser-debtor and used by the latter as an "instrumentality" for the purposes of the transaction should be considered the purchaser-debtor for the purposes of section 580b. Second, Enterprises asks this court to hold that section 580b bars creditors from recovering against the assets of a closely-held corporation guarantor where section 580b bars the creditor from recovering against the purchaser-debtor shareholder of the company.

The new rules suggested by Enterprises would not only seriously complicate California section 580b law, but could dramatically affect the purchase and sale of real property in cases in which the parties rely upon the probity of a guaranty. Enterprises has not even attempted to address these latter effects. Enterprises' suggestions are neither mandated by law, nor sound.

### IV. *Conclusion*

At bottom, this case is about a party attempting to gain a tax advantage without stopping to consider the possible downstream consequences of executing a guaranty. To induce Paradise to agree to help Herb reduce his tax liabilities, the McWilliamses effectively agreed to denude their corporation (Enterprises) of the section 580b protection it would have had as the purchaser of real property. We find no equities that compel this court to retrieve their chestnuts from the fire.

AFFIRMED.