In re PRESTIGE LIMITED PARTNER-
SHIP–CONCORD, a California lim-
ited partnership, Debtor(s).

PRESTIGE LIMITED PARTNERSHIP–
CONCORD, a California limited
partnership, Plaintiff(s),

v.

EAST BAY CAR WASH PARTNERS,
a California limited partnership,
Defendant(s).

Bankruptcy No. 95–57967–JRG.
Adversary No. 96–5281.

United States Bankruptcy Court,
N.D. California.

Jan. 29, 1997.

Eugene K. Yamamoto, Crosby, Heafey, Roach & May, San Francisco, CA, for Debtor and Plaintiff.

David B. Draper, Martin D. Dioli, Ropers, Majeski, Kohn & Bentley, San Jose, CA; for Defendant.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

JAMES R. GRUBE, Bankruptcy Judge.

### I. *INTRODUCTION*

The debtor and plaintiff in this adversary proceeding is Prestige Limited Partnership, a California limited partnership. Prestige's General Partner is Mesa Full Service Car Wash Partners, which is an Arizona limited partnership. The General Partners of Mesa are several individuals, one of which is Jerry Brassfield. Jerry Brassfield is also the purported guarantor of the promissory note which is at issue in this case.

Before the court is plaintiff's motion for summary judgment by which plaintiff seeks a determination that defendant has waived its lien against debtor's real property lease by attaching and levying upon the unpledged assets of purported guarantor, Jerry Brassfield. Prestige also requests that the court find that East Bay does not have a claim in debtor's estate because it failed to timely file a Proof of Claim.

For the reasons hereinafter stated, Prestige's motion for summary judgment is granted in part.

### II. *FACTUAL BACKGROUND*

The underlying facts are not disputed. In July 1990, Prestige purchased a car wash business from defendant East Bay. The purchase price was $2,850,000, which was paid by (1) $500,000 cash; (2) financing

through San Jose National Bank in the amount of $780,000; and (3) a seller carry-back loan of approximately $1,573,000. A ground lease was also assigned to Prestige as part of the sale. The seller carry-back loan was evidenced by a promissory note to East Bay (hereafter referred to as the "1st Note"), and was secured by Prestige's ground lease, as well as personal property and equipment. The 1st Note was executed by Prestige's General Partner, Mesa Car Wash Limited Partnership, as evidenced by the signatures of Mesa's three individual General Partners, including Jerry Brassfield. The 1st Note also contained a guaranty provision which provided: "This Promissory Note, including all of Trustor's obligations to pay principal and interest are hereby personally guaranteed by Jerry G. Brassfield dba J.G. Brassfield Enterprises." Jerry Brassfield executed the 1st Note in his capacity as General Partner of Mesa, and also as Guarantor in his individual capacity and dba "J.G. Brassfield Enterprises."

In September 1991, the 1st Note was split into two notes—(1) an $800,000 Note (hereafter the "2nd Note"), which contained the same guaranty language as the 1st Note, and was secured by the ground lease; and (2) a Note for $773,000 (hereafter the "3rd Note"), which was also secured by the ground lease and contained the same guaranty language as the other notes. The 2nd Note was subsequently assigned and is not at issue. It is the 3rd Note which is at issue in this case.

There is no dispute that the 1st Note was a purchase money Note;[1] nor is it disputed that the subsequent division of the 1st Note did not change the character of the 2nd and 3rd Notes as purchase money notes.[2] Prestige also cites to case law providing that if a debt is originally a purchase-money debt, the note evidencing the debt is also a purchase-money debt, even if it is not the original note. *Jackson v. Taylor,* 272 Cal.App.2d 1, 76 Cal. Rptr. 891 (1969); *Lucky Inv. v. Adams,* 183 Cal.App.2d 462, 7 Cal.Rptr. 57 (1960).

The 3rd Note became due in October 1993, but the parties agreed to extend the maturity date to October 1, 1995. Prestige subse-

quently attempted to obtain a further extension of the Note due date but was unsuccessful. In October 1995, East Bay commenced an action on the guaranty against Jerry G. Brassfield, individually and dba J.G. Brassfield Enterprises. Brassfield raised as an affirmative defense in his answer that the relief sought by the complaint was a violation of the single action rule of California Code of Civ. Proc. § 726(a). East Bay obtained temporary protective orders against Brassfield, and in March 1996, and April 1996, obtained writs of attachment. East Bay levied on the writs of attachment in April 1996 and attached $74,960.51 of funds held in Brassfield's unpledged bank accounts.

Prestige filed its petition for bankruptcy under Chapter 11 of the Bankruptcy Code on December 1, 1995 and listed East Bay in its schedules as the holder of a disputed secured claim. The deadline for filing proofs of claim was April 10, 1996. East Bay filed a Proof of Claim on May 3, 1996.

### III. *ISSUES PRESENTED*

There are three issues before the court. The first issue is whether Jerry Brassfield, as the general partner of Prestige's general partner Mesa, is a primary obligor under the 3rd Note, such that the purported "guaranty" added no additional liability, and Prestige may assert that, by proceeding against Jerry Brassfield, East Bay has taken its "action" under Calif.Code of Civ. Proc. § 726(a).

If Jerry Brassfield is found to be a primary obligor under the 3rd Note, the second issue presented is whether East Bay's attachment and levy of Brassfield's unpledged bank accounts constitutes an "action" for purposes of California Code of Civ.Proc. § 726(a), resulting in a waiver of East Bay's security interest in Prestige's ground lease.

If the court answers the first and second issues in the affirmative, the third issue presented is whether East Bay has a claim in Prestige's bankruptcy case. If plaintiff's contention is correct that, by proceeding against Brassfield, East Bay made an election of remedies and waived its lien against

---

1. East Bay admitted this fact in its Answer.

2. East Bay also admitted this fact in its Answer.

debtor's ground lease, East Bay could have only an unsecured claim in the debtor's case. However, Prestige contends that since East Bay did not file a timely proof of claim, it does not even have an unsecured claim.

## IV. APPLICABLE LAW ON MOTION FOR SUMMARY JUDGMENT

Plaintiff has moved for summary judgment under Federal Rule of Civ. Proc. 56, which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.

Summary judgment is appropriate where no genuine issue of material fact exists and a party is entitled to prevail in the case as a matter of law. Fed.R.Civ.P. 56(c); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991), *cert. denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991), *citing, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The party requesting summary judgment has the initial burden to show that there are no genuine issues of material fact. *Bhan v. NME Hospitals, Inc.,* 929 F.2d at 1409. The nonmovant's version of the facts must be accepted and all inferences from the underlying and undisputed facts are to be drawn in favor of the nonmovant. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *quoting* Fed. R.Civ.P. 56(c). If the moving party satisfies this initial burden, the opposing party must go beyond the pleadings and by affidavit, deposition, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

## V. DISCUSSION

### A. Is Jerry Brassfield a Primary Obligor Under the Third Note?

With respect to the first issue, plaintiff contends that East Bay's action against Brassfield as guarantor constitutes an action against a primary obligor under the 3rd Note, citing to cases that hold that general partners are primary obligors because they are jointly liable for partnership liabilities, and purported "guarantees" by general partners therefore add no additional liability. Defendant, on the other hand, cites to a number of cases that have analyzed whether a guaranty is a "true" guarantee or a "sham" guaranty, and those courts have looked to see if there is an attempt to get around California's anti-deficiency legislation by creating some sort of "straw man" set up. The determination of whether Brassfield is a "primary obligor" is a significant issue, because if he is primary obligor of the 3rd Note, Prestige may invoke the protection of California's one-action rule (C.C.P. § 726(a)), and assert that East Bay has waived its security by bringing an "action" on the 3rd Note against Jerry Brassfield. *United California Bank v. Maltzman,* 44 Cal.App.3d 41, 53, 118 Cal.Rptr. 299, 307 (1974); *Westinghouse Credit Corp. v. Barton,* 789 F.Supp. 1043, 1045 (D.C.D.Cal.1992); and *Everts v. Matteson,* 21 Cal.2d 437, 448–450, 132 P.2d 476 (1942). On the other hand, if Brassfield is not a primary obligor, and he is a "true guarantor," Prestige cannot avoid East Bay's lien under the one-action rule. *See, Security–First Nat'l Bank of Los Angeles v. Chapman,* 31 Cal.App.2d 182, 186, 87 P.2d 724, 726 (1939) (*reh'g denied* ); and *Westinghouse Credit Corp. v. Barton,* 789 F.Supp. at 1045, *citing, Bauman v. Castle,* 15 Cal.App.3d 990, 994, 93 Cal.Rptr. 565 (1971).

Prestige cites to California Corp.Code § 15015,[3] which provides that a partner is

---

3. Cal.Corp.Code § 15015(a) provides:

Except as provided in subdivision (b), all partners are liable as follows:

jointly liable for the debts of a partnership (applicable to Prestige as a California limited partnership), and Arizona Rev.Stat. § 29–215,[4] which provides that partners are jointly and severally liable for the debts and obligations of the partnership (applicable to Mesa as an Arizona limited partnership). Prestige cites to three cases involving partnerships which hold that general partners who purport to guarantee a secured loan on behalf of a partnership take on no additional liability since they are already jointly liable as general partners, and therefore a purported guarantee cannot be enforced as an independent agreement. And, because the partners are principal obligors of the partnership's debt, the courts have held that they are protected by California's anti-deficiency laws. *Riddle v. Lushing*, 203 Cal. App.2d 831, 21 Cal.Rptr. 902 (1962) (deficiency judgment against partners/guarantors barred by § 580b); *Union Bank v. Dorn*, 254 Cal.App.2d 157, 61 Cal.Rptr. 893 (1967) (partners/guarantors entitled to full protection of § 580d which prohibits deficiency judgments after foreclosure under a power of sale); and *Westinghouse Credit Corp. v. Barton*, 789 F.Supp. 1043 (D.C.D.Cal.1992) (partner/guarantor of non-recourse obligation protected by Code of Civ.Proc. § 580d).[5]

The facts presented in this case are different from the cases cited by plaintiff, in that the general partner of Prestige is another limited partnership, Mesa. Prestige argues that this does not change the applicability of the "primary obligor" analysis of the above

cases, because Mesa is jointly liable for Prestige's debts, and Brassfield is jointly and severally liable for Mesa's debts, including Mesa's liability for Prestige's debts.

East Bay contends that a factual question is presented as to whether Brassfield is a true guarantor or a primary obligor in guarantor's guise, and that the court must look at the purpose and effect of the agreements to determine whether there is an attempt to recover a deficiency in violation of § 580d. East Bay takes the position that in order to find the guaranty unenforceable, the court must find that Brassfield is the "alter ego" or "mere instrumentality" of Prestige. In making this argument, East Bay relies on several cases in which courts have looked at factors to determine whether a guaranty is a true guaranty, or whether it is a "sham" guaranty devised to get around California's anti-deficiency statutes. The cases cited to are *Paradise Land & Cattle v. McWilliams Enters., Inc.*, 959 F.2d 1463 (9th Cir.1992); *Valinda Builders, Inc. v. Bissner*, 230 Cal.App.2d 106, 40 Cal.Rptr. 735 (1964); *River Bank America v. Diller*, 38 Cal.App.4th 1400, 45 Cal. Rptr.2d 790 (1995) (*reh'g denied*); and *Younker v. Reseda Manor*, 255 Cal.App.2d 431, 63 Cal.Rptr. 197 (1967).

The court finds the cases cited by East Bay to be distinguishable from the facts presented in this case because those cases do not involve an individual's guarantee of a partnership debt, but instead address the question of whether a corporation or individ-

---

(1) Jointly and severally for everything chargeable to the partnership under Sections 15013 and 15014.
(2) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.

There are no facts before the court to find that § 15015(a)(1) is applicable in this case, because the sections to which it applies are § 15013 [liability of partnership for wrongs of partner], and § 15014 [liability of partnership for partner's misapplication of money or property]. The applicable section in this case is § 15015(a)(2), which provides that partners are jointly liable for all debts and obligations of the partnership.

**4.** Arizona Rev.Statute § 29–215(A) provides:
Except as provided in subsection B of this section, all partners are liable jointly and sev-

erally for everything chargeable to the partnership under §§ 29–213 and 29–214, and for all other debts and obligations of the partnership, but any partner may enter into a separate obligation to perform a partnership contract.

**5.** Because Jerry Brassfield is not a party in this action, the court makes no ruling as to whether Jerry Brassfield is entitled to and/or to what extent he may be covered by California's various anti-deficiency statutes. The court's ruling is limited to whether Brassfield is a primary obligor under the 3rd Note, and whether the judicial proceeding against Brassfield constitutes an "action" under Calif.Code of Civ.Proc. § 726(a), such that East Bay has made an election of remedies that results in a waiver of its security in the Prestige bankruptcy case.

ual is really the "alter ego" of the other, such that the guarantor is really the true borrower. The court does not believe an "alter ego" type analysis is necessary here because partners are by law jointly liable for a partnership's debts and obligations. *See, Riddle v. Lushing,* 203 Cal.App.2d 831, 21 Cal.Rptr. 902 (1962); *Union Bank v. Dorn,* 254 Cal. App.2d 157, 61 Cal.Rptr. 893 (1967); and *Westinghouse Credit Corp. v. Barton,* 789 F.Supp. 1043 (C.D.Cal.1992).

Looking to the cases cited by defendant, the *River Bank* case is cited for the proposition that to determine whether individuals as purported guarantors are primary obligors, such that their guarantees are considered ineffective, courts look to the purpose and effect of the agreements to determine whether they are attempts to recover deficiencies in violation of § 580d. However, the court in that case pointed out that had the individual purported guarantors in that case been the general partners of the subject partnership (rather than a corporation that they fully owned and controlled), "there is no question [the] guaranty would have been a sham ... [because] in those circumstances, the [individuals] would have been treated as primary obligors and would be entitled to the unwaivable protection of Code of Civil Procedure section 580d, which prohibits a deficiency judgment after nonjudicial foreclosure under a power of sale." *River Bank America,* 38 Cal.App.4th 1400, 1422, 45 Cal.Rptr.2d 790, 802. Thus, the Court in *River Bank* recognized that in the case of individual partnership guarantees, it is unnecessary to look to the purpose and effect of the guarantee because as a matter of law, partners are jointly liable for the partnership's obligations, and they are therefore primary obligors.

The court finds the other cases cited by defendant to be similarly distinguishable from this case, in that they do not involve the straightforward legal question of whether a partner is primarily obligated on a partnership obligation. Instead, the cases involve "alter ego," and "straw man" analyses in which the courts have had to determine if an individual or corporate guarantor was the "mere instrumentality" of the borrower. For example, in *Younker,* the court held that

there was a triable issue as to whether an individual guarantor was truly a guarantor, in light of the fact that the individual contended that he formed the borrower corporation at the solicitation of the lender, and he was told that his signature as guarantor was merely for use as collateral and the note would remain one for purchase money. *Younker,* 255 Cal.App.2d 431, 438, 63 Cal. Rptr. 197, 202 (1967). Similarly, in *Valinda Builders,* two individuals entered into a contract of sale for the purchase of undeveloped real property. The contract provided that the individuals guaranteed performance. The individuals formed a corporation that was funded by $200 paid-in-capital, and the corporation took title to the property and executed a note and deed of trust in favor of the seller (although the formation of the corporation was not required under the contract of sale). The Court held that there was no evidence that the corporation was anything other than an instrumentality used by the individuals or that defendants were ever removed from their status and obligations of purchasers. The court thus held that the individuals were entitled to the protections of § 580b of the Code of Civil Procedure, and the seller could not look beyond the land for payment of the purchase price.

Lastly, in *Paradise,* a corporate guarantor argued that § 580b should apply because the guaranty was a "sham" because it was the true purchaser-debtor, and not the individuals, who executed the note and deed of trust. The Court noted that the "sham" guaranty cases, including *Younker, Valinda,* and *Riddle,* had at least two facts in common—the guarantor was an individual, and the purchaser-debtor in each case was a "dummy" controlled by the guarantor. The Court found that the "sham" guaranty cases were not applicable in *Paradise* because, unlike the cases cited, the guarantor in *Paradise* was a corporation, and one of the purposes of § 580b "concerns the harmful effect of unlimited personal liability in times of economic downturn," and the "concern is not as strong where the guarantor is a corporation whose owners are protected by the central feature of corporations: limited liability." *Paradise Land and Cattle Co.,* 959 F.2d at 1467. The Court also found that the corporation was not

a "dummy," as was the case in the "sham" guaranty cases cited, because the corporation was a "long-standing corporation of substantial assets." *Id.*

As previously stated, the court does not believe that it is necessary to determine if Brassfield is an "alter ego" or "straw man" for Prestige. The court believes the correct inquiry is strictly a legal one—that is, given the express statutory authority in California that provides partners are jointly liable for partnership debts, and the express statutory authority in Arizona that provides that partners are jointly and severally liable for the partnership debts, the court must determine if Brassfield, as a general partner of Prestige's general partner, is a primary obligor under the 3rd Note, such that the purported guaranty added no additional liability.

In attempting to determine who would be primarily liable under the 3rd Note, the court posed the following question at the hearing: Assuming that the Note was unsecured and there was no guarantee, if East Bay had brought an action to enforce the 3rd Note, would it not in fact include as parties not only Prestige, but also Mesa, and Mesa's general partners, including Jerry Brassfield? Counsel for East Bay agreed that all of these persons would be named. East Bay takes the position, however, that Brassfield is at best only "secondarily" liable, because his assets are reached only if Prestige is unable to pay its debts, and Mesa is unable to pay Prestige's debts. While the court understands the logic behind East Bay's argument that Brassfield is "twice removed" from liability under the 3rd Note, in reviewing the applicable law the court concludes that Brassfield is primarily obligated on the 3rd Note without the guaranty.

In California, "A partnership in the eyes of the law is not a legal entity even though it may be sued under the firm name, by reason of the provisions of section 388 of the Code of Civil Procedure [now CCP § 369.5 [6]]." *Riddle v. Lushing*, 203 Cal. App.2d 831, 836, 21 Cal.Rptr. 902, 904 (1962), citing, *Rudnick v. Delfino*, 140 Cal.App.2d 260, 266, 294 P.2d 983 (1956). And, unlike a corporation and its shareholders, partners are statutorily jointly liable for partnership debts. Cal.Corp.Code § 15015. Under the law in Arizona, general partners are jointly and severally liable for partnership debts, and thus, a partner may be sued severally and his assets reached even though the partnership assets are not exhausted and the other partners are not sued and their assets applied to the debt. *See, Catalina Mortgage Co., Inc. v. Monier*, 166 Ariz. 71, 75, 800 P.2d 574, 578 (1990); *and*, Arizona statutes §§ 29–215 and 44–141.[7]

Applying this law to the present case, the court finds the following result: As a California limited partnership, the general partner of Prestige is jointly liable for the debts of the partnership. Cal.Corp.Code § 15015. Thus, there can be no dispute that Mesa is jointly liable for the debts of Prestige, which includes the obligation to East Bay. Mesa's general partners, in turn, are jointly and severally liable for Mesa's debts, and under the law in Arizona, Brassfield could be sued on one of Mesa's debts or obligations even though the partnership and/or other partners' assets had not yet been applied to the debt. Since the obligation to East Bay is one that Mesa is jointly

---

6. Calif.Code of Civ.Proc. § 369.5 provides:

(a) A partnership or other unincorporated association, whether organized for profit or not, may sue and be sued in the name it has assumed or by which it is known.

(b) A member of the partnership or other unincorporated association may be joined as a party in an action against the unincorporated association. If service of process is made on the member as an individual, whether or not the member is also served as a person upon whom service is made on behalf of the unincorporated association, a judgment against the member based on the member's personal liability may be obtained in the action, whether the liability is joint, joint and several, or several.

7. Arizona Rev.Statute § 44–141(A) provides:

All parties to a joint obligation, including negotiable paper and partnership debts, shall be severally liable also for the full amount of such obligations. An action may be brought against such parties jointly or separately, joining one or more, and judgment may be given in each such action without barring an action against any party to the obligation not included in the judgment, and without releasing any party against whom the action was not brought.

liable for, Brassfield is, by application of Arizona's partnership law, jointly and severally liable for that obligation. Brassfield is therefore not "secondarily" liable for the obligation to East Bay, he is primarily obligated for the debt. Under the *Riddle, Union Bank* and *Westinghouse* cases, the purported guaranty by Jerry Brassfield therefore added no additional liability, and Prestige can therefore assert that East Bay has taken its "action" under the one-action rule by proceeding against Brassfield on the 3rd Note.

■ Before reaching the second issue, the court addresses a final argument by East Bay that it would not have carried back a promissory note for $1.6 million if it believed Brassfield's guarantee was unenforceable. The court does not believe the argument is relevant to the strictly legal question of whether Brassfield is primarily obligated on the 3rd Note. A similar argument was also made in *Riddle v. Lushing,* but the intention of the parties did not affect the Court's ruling that California's anti-deficiency statutes were applicable once the Court concluded that the purported guarantor was a partner of the partnership. 203 Cal.App.2d 831, 21 Cal.Rptr. 902. While this court finds that Jerry Brassfield is a primary obligor under the 3rd Note, the ruling in no way precludes any action East Bay may elect to take against Brassfield for his alleged fraudulent representations or inducements in providing the guarantee to obtain the loan.

### B. *Did East Bay's Attachment of Jerry Brassfield's Unpledged Assets Constitute an "Action" for purposes of Calif.Code of Civ.Proc. § 726(a)?*

Having concluded that Jerry Brassfield is a primary obligor under the 3rd Note, the court next addresses the second issue, which is whether East Bay's attachment of and levy upon Jerry Brassfield's personal assets constitutes an "action" under Calif.Code of Civ. Proc. § 726(a), such that East Bay has forfeited its security interest in the debtor's lease.

California Code of Civ.Proc. § 726(a) provides in relevant part:

There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter.

California Code of Civ.Proc. § 726(a).

■ Section 726 embodies more that the "one-action" rule. It is part of a statutory scheme which requires a secured creditor to proceed against its security before enforcing the underlying debt. *Security Pacific National Bank v. Wozab,* 51 Cal.3d 991, 999, 275 Cal.Rptr. 201, 205, 800 P.2d 557, 561 (1990). Where a secured creditor sues on the obligation and seeks a personal money judgment against the debtor without seeking therein foreclosure of such mortgage or deed of trust, he makes an election of remedies, electing the single remedy of a personal action, and thereby waives his right to foreclose on the security or to sell the security under a power of sale. *Walker v. Community Bank,* 10 Cal.3d 729, 733, 111 Cal.Rptr. 897, 899, 518 P.2d 329, 331 (1974).

The issue presented in this case is whether East Bay's attachment and levy upon Brassfield's unpledged bank accounts constitutes an "action" for purposes of § 726(a). East Bay contends that in issuing the Writs of Attachment, the State Court "necessarily determined that Brassfield was not a primary obligor on East Bay's note from Prestige." East Bay acknowledges that there is no final judgment in the State Court, and so there can be no res judicata affect, but argues that this court should be persuaded by the State Court's issuance of the Writs. Prestige requests that the argument be rejected by reason of Calif.Code of Civ.Proc. § 484.100, which provides with respect to attachments:

The court's determinations under this chapter shall have no effect on the determination of any issues in the action other than issues relevant to proceedings under this chapter nor shall they affect the rights of the plaintiff or defendant in any other action arising out of the same claim of the plaintiff or defendant. The court's determinations under this chapter shall not be given in evidence nor referred to at the trial of any such action.

Calif.Code of Civ.Proc. § 484.100.

■ Pursuant to Calif.Code of Civ.Proc. § 484.100, the State Court's determinations

in issuing the Writs of Attachment are to have no effect on this court's determination of the issues before it, and therefore the court will not consider such evidence.

In support of its position that East Bay's attachment of Brassfield's bank accounts constitutes an "action" under California Code of Civ.Proc. § 726(a), plaintiff cites to *Shin v. Superior Court*, 26 Cal.App.4th 542, 31 Cal. Rptr.2d 587 (1994) (*reh'g denied* ). In *Shin*, the lender was secured by real property located in California. Before foreclosing on its security in California, the lender obtained a prejudgment attachment of one of the co-borrowers' unpledged real property located in Korea. The Court held that the prejudgment attachment violated the security first principle of Calif.Code of Civ.Proc. § 726(a).

East Bay acknowledges that a creditor who recovers a personal money judgment against a debtor without first foreclosing its security results in a loss of its liens on the property not foreclosed, but it contends that absent an actual judgment being obtained, there is no violation of Calif.Code of Civ. Proc. § 726(a) since the action may be dismissed before judgment. Defendant asks that the court look to two cases which *Shin* expressly declined to follow. The two cases are *In re Tidrick*, 105 B.R. 584 (Bankr. C.D.Cal.1989) and *In re Madigan*, 122 B.R. 103 (9th Cir. BAP 1991). Both cases held that an actual judgment is necessary before § 726 bars further recovery, based on the holding in another case, *Brice v. Walker*, 50 Cal.App. 49, 194 P. 721 (1920). In *Brice v. Walker*, the creditor brought an action for a personal judgment against the borrower before foreclosing on its security interest in an automobile. The borrower gave the automobile to his daughter, and the bank asserted a right to take possession of the automobile as collateral for its loan. The daughter, who had possession of the automobile, argued that the bank had made an election of remedies by seeking a personal judgment. The Court disagreed, citing to two cases involving conditional sales contracts in which the courts held there was no election of remedies absent a judgment.

The Court in *Shin* found that the reliance by *Tidrick* and *Madigan* on *Brice v. Walker* was misplaced, stating:

> In *Brice v. Walker*, the court analyzed instances involving conditional sales contracts in which the seller had the right to bring an action for the purchase money or retake possession of the property but not both. "In *George J. Birkel Co. v. Nast*, 20 Cal.App. 651 [129 P. 945] ..., the court said: 'The legal effect of such an election was immediately upon the filing of the complaint, to transfer and vest in defendant title.' ... [Furthermore,] [i]n *Geo. Birkel Co. v. Nast*, supra, the plaintiff was seeking to hold by attachment the property which by conditional sale contract had been delivered to the defendant. In none of these cases was it necessary to determine that the commencement of an action ... without any judicial action by the court, and without any special proceeding by attachment or otherwise against the defendant's property, constituted an irrevocable election of the prior remedy." (*Brice v. Walker*, supra, 50 Cal.App. at pp. 52–53, 194 P. 721.) Thus, *Brice v. Walker* is distinguishable not only on its facts, but in accordance with its own analysis that a "special proceeding by attachment or otherwise against the defendant's property" calls for a different result. Accordingly, [Respondent's] reliance on *In re Tidrick*, supra, 105 B.R. 584, and *In re Madigan*, supra, 122 B.R. 103, is misplaced.

*Shin v. Superior Court*, 26 Cal.App.4th 542, 550–51, 31 Cal.Rptr.2d 587, 593–94 (1994).

The court agrees with *Shin* that *Brice v. Walker* is distinguishable, and the court finds that *Madigan* and *Tidrick* are also distinguishable from the facts presented in this case in that neither case involved a prejudgment attachment. In *Madigan*, the lender filed an action for a money judgment against a guarantor and took the guarantor's default. However, no default judgment was ever entered. The Court held that there was no violation of Calif.Code of Civ.Proc. § 726 because no judgment had been entered and the creditor could have filed an amended complaint seeking foreclosure, and not obtained a default judgment. *In re Madigan*, 122 B.R.

at 106. Notably, in response to the debtor's citation to cases in which courts have held that the offset of a bank account is an election of remedies, the Court stated: "This situation is distinguishable from the case before the BAP. In the case of offsets, although there was no judicial action, the mortgagee actually partially collected on the secured obligation, through a self-help remedy available at law. Thus a legal remedy was actually exercised. [The creditor in *Madigan* ], on the other hand, while closing in on exercise of a legal remedy, did not complete the process." *Id.* at 106.

■ Defendant attempts to distinguish the facts presented in *Shin* on the grounds that there has been only one lawsuit filed in this case, and not two lawsuits as was the case in *Shin*, and argues that the fact that the property attached was located in a different country than the security is a distinguishing factor. The court disagrees. In determining whether there has been an "action" for purposes of Calif.Code of Civ.Proc. § 726(a), the court looks to the statutory definition of an "action," which is found at Calif.Code of Civ.Procedure § 22. That section provides:

An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.

Calif.Code of Civ.Procedure § 22. *And see, Security Pacific Nat'l Bank v. Wozab*, 51 Cal.3d 991, 998, 275 Cal.Rptr. 201, 204, 800 P.2d 557, 560 (1990) (whether there has been an "action" under § 726(a) is answered by C.C.P. § 22).

■ The court in *Shin* reasoned that if an involuntary "banker's lien" without the aid of judicial authority constitutes an election of remedies triggering forfeiture of the creditor's security interest [*see Security Pacific National Bank v. Wozab*, 51 Cal.3d 991, 275 Cal.Rptr. 201, 800 P.2d 557], then the initiation of an independent judicial proceeding to attach a debtor's unpledged assets should have the same effect. *Shin*, at 26 Cal. App.4th 542, 548, 31 Cal.Rptr.2d 587, 591. The Court stated, "The fact that the exercise of a 'banker's lien' resulted in the immediate

loss of the debtor's cash deposits but [creditor] has had Shin's property under attachment for more than two years is not a significant difference. The extent of appropriation is only a matter of degree and, by restricting Shin's use of his unpledged assets, his ability to protect and defend his interests is impaired." *Id.* The same reasoning is applicable here. East Bay initiated a judicial proceeding to enforce the purported guaranty of Jerry Brassfield. While the proceeding could have been dismissed prior to any prosecution of the action, that did not occur. Instead, East Bay obtained the Writs of Attachment and levied upon Brassfield's bank accounts. Under the holding in *Shin*, this constitutes an action. As already noted, the 9th Circuit Bankruptcy Appellate Panel in *Madigan* similarly recognized in dicta that the exercise of a legal remedy, such as an offset, in which the mortgagee actually partially collects on the secured obligation constitutes an action. *Madigan*, 122 B.R. 103, 106. Pursuant to the statutory definition of an "action," and the holding in *Shin*, the court finds that East Bay's attachment and levy upon Brassfield's bank accounts constitutes an "action" for purposes of § 726(a). The result of having taken an "action" in California is a waiver of East Bay's security interest in the debtor's ground lease. *Walker v. Community Bank*, 10 Cal.3d 729, 733, 111 Cal.Rptr. 897, 899, 518 P.2d 329, 331 (1974), *Shin v. Superior Court*, 26 Cal. App.4th 542, 31 Cal.Rptr.2d 587.

### C. Does East Bay Have a "Claim" in Debtor's Bankruptcy Estate?

■ Having found that East Bay has taken an "action" for purposes of Calif.Code of Civ.Proc. § 726(a), resulting in the loss of its security interest, the third issue presented by Prestige is whether East Bay has an unsecured claim in the debtor's bankruptcy estate. However, no objection to any claim of East Bay was raised in Prestige's complaint. Therefore, the court does not believe any issues regarding East Bay's potential claim are properly before it at this time, and thus, the court does not consider this issue.

## VI. *CONCLUSION*

Based on the foregoing, the summary judgment of Prestige is granted in part. The statements in this order shall constitute the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.