234 F.3d 1108 (9th Cir. 2000)
 In re: PRESTIGE LIMITED PARTNERSHIP CONCORD, a California limited partnership, Debtor.
PRESTIGE LIMITED PARTNERSHIP CONCORD, a California limited partnership, Appellant,
v.
EAST BAY CAR WASH PARTNERS, a California limited partnership, Appellee.
 No. 99-15673
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted June 14, 2000
Filed November 28, 2000
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Eugene K. Yamamoto, Oakland, California, for the appellant.
 Heinz Binder, Binder & Malter, Santa Clara, California, forthe appellee.
 Appeal from the United States District Court for the Northern District of California Ronald M. Whyte, District Judge, Presiding. D.C. No. CV 98-20876 RMW
 Before: Andrew J. Kleinfeld, A. Wallace Tashima, and Marsha S. Berzon, Circuit Judges.
 TASHIMA, Circuit Judge:
 
 
 1
 Prestige Limited Partnership ("Prestige") appeals the district court's order affirming an order of the bankruptcy court. We conclude that the unsecured claim held by East Bay Car Wash Partners ("East Bay") against Prestige's bankruptcy estate is not barred by Cal. Civ. Proc. Code 580b nor by East Bay's violation of Cal. Civ. Proc. Code 726. We therefore affirm the district court order.
 
 Background
 
 2
 In 1990, Prestige purchased a car wash business from East Bay, financed in part by a seller carry-back loan of $1,573,000. Prestige gave East Bay a promissory note ("first note") that was secured by a deed of trust and a security interest in Prestige's personal property and equipment. The first note was signed by Prestige's three general partners, including Jerry Brassfield, and included a guaranty provision stating, "This Promissory Note, including all of Trustor's obligations to pay principal and interest are hereby personally guaranteed by Jerry G. Brassfield dba J.G. Brassfield Enterprises."
 
 
 3
 In September 1991, the first note was split into two notes, one for $800,000 ("second note"), and one for $773,000 ("third note"), both of which were secured by deeds of trust and both of which contained the same personal guaranty as the first note. The second note was subsequently assigned and is no longer at issue. The third note was due in October 1993, but the parties extended the maturity date to October 1995.
 
 
 4
 In October 1995, Prestige defaulted on the third note. Rather than foreclosing on its security interest, East Bay filed an action on the guaranty against Brassfield, seeking writs of attachment against his personal assets. One of the affirmative defenses Brassfield raised was that the relief sought was a violation of the single action rule found in Cal. Civ. Proc. Code 726(a), which requires that a secured creditor seek foreclosure as the single form of action for the recovery of a debt secured by a mortgage or deed of trust on real property. East Bay obtained the writs of attachment, and, in April 1996,attached approximately $75,000 in Brassfield's personal bank accounts.
 
 
 5
 In December 1995, Prestige filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code, listing East Bay as the holder of a disputed secured claim. On April 25, 1996, Prestige filed an adversary proceeding in bankruptcy court, seeking the avoidance of East Bay's lien due to its violation of 726(a), and a declaration that the third note was unenforceable under the anti-deficiency statute found in Cal. Civ. Proc. Code 580b. Prestige filed a motion for summary judgment, setting forth three issues: (1) whether Brassfield was a primary obligor under the third note, such that East Bay violated 726(a) by proceeding against his unpledged assets, (2) whether East Bay's action against Brassfield's unpledged assets constituted an action under 726(a), resulting in a waiver of East Bay's security interest, and (3) whether East Bay had any claim in Prestige's bankruptcy case because of its failure timely to file a proof of claim and because its loan was non-recourse by operation of 580b.
 
 
 6
 In January 1997, the bankruptcy court entered an Order Granting Partial Summary Judgment in favor of Prestige, ruling on the first two issues. See Prestige Ltd. P'ship-Concord v. East Bay Car Wash Partners (In re Prestige Ltd. P'shipConcord), 205 B.R. 427 (Bankr. N.D. Cal. 1997) ("Prestige I"). The court found that Brassfield was a primary obligor on the third note, "such that the purported guaranty added no additional liability," and that East Bay had taken its action under 726(a), resulting in a waiver of its security interest in the real property. Id. at 433, 436. The court declined to consider the third issue because the issue was not properly before it. See id. at 436. As a result of this ruling, the Santa Clara County Superior Court dissolved the writs of attachment, and, in August 1997, East Bay released the attachments of Brassfield's personal accounts.
 
 
 7
 The district court affirmed the order granting partial summary judgment. We affirmed, adopting the facts and reasons set forth in the bankruptcy court's decision. See Prestige Ltd. P'ship-Concord v. East Bay Car Wash Partners (In re Prestige Ltd. P'ship-Concord), 164 F.3d 1214, 1215 (9th Cir. 1999) ("Prestige III").
 
 
 8
 On May 3, 1996, prior to our decision in Prestige III, East Bay filed a proof of claim in Prestige's bankruptcy case. The bankruptcy court then held a hearing to determine the final matter raised by Prestige--whether East Bay had any claim against Prestige. In order to make the determination, the court addressed the following three arguments raised by Prestige as to why East Bay's unsecured claim should be disallowed: (1) it was not timely filed, (2) East Bay's violation ofS 726(a) caused it to lose both its security and its unpaid debt, and (3) the underlying note is a non-recourse purchase money note and is therefore unenforceable under 580b. See Prestige Ltd. P'ship-Concord v. East Bay Car Wash Partners (In re Prestige Ltd. P'ship-Concord), 223 B.R. 203, 207 (Bankr. N.D. Cal. 1998) ("Prestige II").
 
 
 9
 The bankruptcy court denied Prestige's motion for partial summary judgment and overruled its objection to East Bay's unsecured claim. See id. at 211. The court concluded that East Bay had timely filed its claim, had lost its security only, not its debt, and was not subject to the provisions ofS 580b. See id. at 208-10. East Bay therefore held an unsecured claim in Prestige's bankruptcy case. See id. at 211. The district court affirmed the denial of the remainder of Prestige's summary judgment motion and the overruling of Prestige's objection to East Bay's claim. Prestige filed a timely notice of appeal.
 
 Jurisdiction
 
 10
 We have jurisdiction over an appeal from a final order of the district court under 28 U.S.C. 158(d) & 1291. Ordinarily, a district court order is final if it affirms or reverses a final bankruptcy court order. See Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Village Resort, Ltd.), 81 F.3d 103, 105 (9th Cir. 1996). However, "[i[n bankruptcy proceedings the rules of finality developed under the general grant of appellate jurisdiction provided in 28 U.S.C. 1291 (1982) are given a flexible reading." Century Ctr. Partners Ltd. v. FDIC (In re Century Ctr. Partners Ltd.), 969 F.2d 835, 838 (9th Cir. 1992) (internal quotation marks omitted); see also Walthall v. United States, 131 F.3d 1289, 1292-93 (9th Cir. 1997) ("finality determination in the bankruptcy context has its own set of rules"). We therefore use a "pragmatic approach" to finality in bankruptcy "because `certain proceedings in a bankruptcy case are so distinctive and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right.' " Alexander v. Compton (In re Bonham), 229 F.3d 750, 761 (9th Cir.2000) (quoting Elliott v. Four Seasons Properties (In re Frontier Properties, Inc.), 979 F.2d 1358, 1363 (9th Cir. 1992)). This approach has led us to exercise jurisdiction over appeals from bankruptcy court orders denying summary judgment. See Alvarado v. Walsh (In re LCO Enters.), 12 F.3d 938, 940-41 (9th Cir. 1993) (affirming BAP's reversal of the bankruptcy court's denial of the debtor landlord's motion for summary judgment).
 
 
 11
 The district court's order disposed of all the issues in the case by overruling Prestige's objections to East Bay's claim and was thus sufficiently conclusive to be appealable.[1]
 
 
 12
 Because the district court declined to rule on the issue of the amount of East Bay's claim, however, the question arises of whether the district court's order was final. Prestige argued before the district court and to this court that, even if East Bay did hold an unsecured claim, it should be limited to the amount of the avoided security interest, rather than the amount of the debt. The bankruptcy court did not address the issue, presumably because Prestige did not raise it, focusing instead on the issue of whether East Bay held a claim at all. See Prestige II, 223 B.R. at 207 ("The court is now asked to determine whether East Bay has an unsecured claim in the bankruptcy case."); id. ("The ultimate issue is whether East Bay has any claim against Prestige in the bankruptcy case."). The district court noted that the bankruptcy court did not address the amount of the claim and that the record was "void" as to whether Prestige raised the issue below, and so declined to rule on the issue.
 
 
 13
 Any further proceedings that would be required here in order to determine the amount of East Bay's claim would involve "new proceedings and factual findings independent of the legal conclusion upon which the bankruptcy court based its decision" to allow East Bay's claim at all. Sims v. DeArmond (In re Lendvest Mortgage, Inc.), 42 F.3d 1181, 1183 (9th Cir. 1994). Furthermore, the question of whether East Bay still holds a claim at all " `is clearly potentially dispositive,' " for there is no need to determine the amount of East Bay's claim without a finding that it still holds a claim. Id. (quoting Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'ship), 2 F.3d 899, 904 (9th Cir. 1993), dismissed as moot, 513 U.S. 18 (1994)). In United States v. Stone (In re Stone), 6 F.3d 581 (9th Cir. 1993), the bankruptcy court granted partial summary judgment on the issue of whether the IRS held an interest in proceeds held by the debtor, leaving other issues yet to be determined in the adversary proceeding. As in Stone, where the BAP's affirmance of the bankruptcy court's order was a final and appealable order because it "resolved[d] the question of the priority of the federal tax lien," the district court's order here resolved the question of whether East Bay holds a claim at all. Id. at 583 n.1. The district court's order is therefore final for purposes of our jurisdiction. Cf. Law Offices of Nicholas A. Franke v. Tiffany, 113 F.3d 1040. 1043 (9th Cir. 1997) (where the bankruptcy court ordered funds disgorged "with disposition pending further court order," appellate jurisdiction existed over the discrete issue of whether the bankruptcy court properly ordered the funds disgorged at all).
 
 Standard of Review
 
 14
 The district court's decision on appeal from a bankruptcy court is reviewed de novo. See Preblich v. Battley, 181 F.3d 1048, 1051 (9th Cir. 1999). Thus, we independently review the bankruptcy court's decision and do not give deference to the district court's determinations. See id. The bankruptcy court's denial of summary judgment is subject to de novo review. See Alvarado v. Walsh (In re LCO Enters.), 12 F.3d938, 941 (9th Cir. 1993). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the relevant substantive law. See id.
 
 Analysis
 I. Section 726(a)
 
 15
 Cal. Civ. Proc. Code 726(a) provides, in relevant part, that "[t]here can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter." Section 726 "is both a `security-first' and`one-action' rule: It compels the secured creditor, in a single action, to exhaust his security judicially before he may obtain a monetary`deficiency' judgment against the debtor." O'Neil v. General Sec. Corp., 5 Cal. Rptr. 2d 712, 716 (Ct. App. 1992) (citing Security Pac. Nat'l Bank v. Wozab, 800 P.2d 557 (Cal. 1990) ("Wozab")). Thus, when a secured creditor sues on the obligation rather than seeking foreclosure of the mortgage or deed of trust, he has made an election of remedies, "electing the single remedy of a personal action, and thereby waiv[ing] his right to foreclose on the security or to sell the security under a power of sale." Prestige I, 205 B.R. at 434.
 
 
 16
 A debtor may invoke the protection of 726(a) by either (1) raising it as an affirmative defense, compelling the creditor to first exhaust the security before being entitled to a monetary judgment on any deficiency, or (2) invoking it as a sanction, meaning that a creditor who obtains a monetary judgment rather than foreclosing on the security will be deemed to have waived the right to pursue the security interest. See Wozab, 800 P.2d at 560; O'Neil , 5 Cal. Rptr. 2d at 716. Moreover, even if the creditor does rely on the security first, his right to a judgment against the debtor for any deficiency may be limited or barred by the anti-deficiency statutes found in 580a, 580b, 580d, or 726. See Walker v. Community Bank, 518 P.2d 329, 331 (Cal. 1974). The purposes behind these provisions are "to prevent multiplicity of actions, to compel exhaustion of all security before entry of a deficiency judgment and to require the debtor to be credited with the fair market value of the secured property before being subjected to personal liability." Id. at 333.
 
 
 17
 When the bankruptcy court granted in part Prestige's motion for summary judgment, it concluded that East Bay had waived its security interest because its attachment and levying upon Brassfield's bank accounts constituted an action under 726(a). See Prestige I, 205 B.R. at 436. Prestige contends on this appeal that East Bay has waived not only its security, butits underlying debt as well, due to its violation of the security first rule in 726(a). In Wozab, however, the court held that a bank's violation of 726(a) resulted in a waiver of its security interest in the debtor's real property, but not the forfeiture of the underlying debt. See Wozab, 800 P.2d 564-66; see also DiSalvo v. DiSalvo (In re DiSalvo), 221 B.R. 769, 774-75 (B.A.P. 9th Cir. 1998) (holding that it was erroneous to impose the double sanction of losing both the security and the underlying obligation for a violation of 726(a)), dismissed as moot, 219 F.3d 1035 (9th Cir. 2000).
 
 
 18
 Prestige attempts to avoid the clear holding of Wozab and DiSalvo by citing case law in which a co-obligor was allowed to invoke 726(a) to bar an action on a promissory note because the lender reconveyed the security under an agreement with the other co-obligor without the knowledge of the first co-obligor.[2] For example, in Pacific Valley Bank v. Schwenke, 234 Cal. Rptr. 298 (Ct. App. 1987) (" Schwenke"), Schwenke was allowed to rely on 726(a) to be relieved of any personal liability on a promissory note, where the creditor bank had voluntarily released the security without his knowledge or consent. See id. at 302-06; see also Walker, 518 P.2d at 335-37 (holding that where the debtor failed to invoke the protection of 726, thus waiving the affirmative defense aspect of the statute, the debtor's successor-in-interest was still entitled to raise the defense, resulting in the creditor's losing its security interest in the real property); O'Neil, 5 Cal. Rptr. 2d at 717-18 (relying on both Schwenke and Walker to hold that the debtor's waiver of the sanction aspect of 726 did not operate to deprive third party lien holders of the protections of 726).
 
 
 19
 Prestige relies on this line of cases to argue that East Bay lost its right to proceed against Prestige on the debt because Prestige did not have the opportunity to invokeS 726 as an affirmative defense in East Bay's action against Brassfield, the co-obligor. Prestige's case is distinguishable, however, because it had knowledge of East Bay's actions, even though they were taken without Prestige's consent.
 
 
 20
 Moreover, Prestige had the opportunity to invoke the sanction aspect of 726 in bankruptcy court, resulting in East Bay's loss of its security interest. See Prestige I, 205 B.R. at 436. Similar to Wozab, where the court noted that the debtors accepted the bank's reconveyance of the deed of trust and thus "acquiesced in (indeed, demanded) the bank's decision not to foreclose," 800 P.2d at 566, Prestige was the one who sought to have East Bay's security interest waived. Finally, unlike Schwenke, Walker, and O'Neil, where the creditor received some payment, East Bay, by its violation ofS 726, has lost not only its security interest in the real property, but also the very payment that constituted the violation.[3] The coobligor line of cases therefore does not help Prestige; under Wozab and DiSalvo, the double sanction of losing both the security interest and the underlying debt is not allowed.
 
 II. Section 580b
 
 21
 Prestige points out that Wozab and DiSalvo did not involve purchase money notes and so argues that they are not controlling because they did not involve the application of Cal. Civ. Proc. Code 580b. Section 580b precludes a deficiency judgment on a purchase money note and provides, in part, that "no deficiency judgment shall lie in any event after a sale of real property . . . for failure of the purchaser to complete his or her contract of sale, or under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property. " Cal. Civ. Proc. Code 580b. California's anti-deficiency statutes are intended "to limit strictly the right to recover deficiency judgments, that is, to recover on the debt more than the value of the security." Brown, 259 P.2d at 426. The bankruptcy court reasoned that 580b applies only when there is a deficiency, defined as " `that part of a debt secured by mortgage not realized from sale of mortgaged property,' " and thus concluded that 580b did not apply to prohibit East Bay's unsecured claim because there had been no foreclosure or sale. Prestige II, 223 B.R. at 209 (quoting Black's Law Dictionary 421 (6th ed. 1990)).
 
 A. Standard Purchase Money Note
 
 22
 East Bay contends that 580b does not apply because the note was not a "standard" purchase money note. As noted above, however, the bankruptcy court stated several times that there was no dispute that all three notes were purchase money notes, and that East Bay had admitted as much.[4] See Prestige I, 205 B.R. at 429 & n.2; Prestige II, 223 B.R. at 206 & n.3.
 
 
 23
 Spangler v. Memel, 498 P.2d 1055 (Cal. 1972) (en banc), does not aid East Bay. In Spangler, the court reaffirmed its ruling in Brown that 580b applies to sold-out junior lienors. See id. at 1059. The court went on to state, however, that 580b applies automatically only to a "standard" purchase money transaction, which it described as one in which the purchaser is going to continue the same or similar use of the property. See id. at 1059-60. The court concluded that 580b does not automatically apply where the vendor agrees to subordinate his lien to the purchaser's construction loan because the purchaser does not intend to continue with the same use of the property. See id. at 1060.
 
 
 24
 Contrary to East Bay's assertion, Spangler does not hold that 580b does not apply "in the case of commercial developments." Rather, Spangler specifically dealt with "the subordination clause situation." Id. East Bay asserts that Prestige changed the business from a "high-end" to a "low-end" car wash. This difference, however, is hardly analogous to that in Spangler, where the purchaser took out a $408,000 construction loan to construct a three-story office building in place of the two-story residence (converted by the seller to an office) on the land it had purchased. See id. at 1055-56. Whether "high-end" or "low-end," continuing to run a car wash constitutes "the same or similar use of the property. " Id. at 1060. Spangler does not support East Bay's argument; the note was a standard purchase money note.
 
 B. Sale of the Property
 
 25
 Prestige argues that a sale of the property is not required in order for 580b to apply, relying on Brown. We disagree, however, that Brown is controlling and hold that, in this situation, where the security has been lost due to a violation of 726 and, consequently, there has not been and can never be a sale of the property, 580b does not apply.
 
 
 26
 In Brown, the California Supreme Court held that 580b prevented a junior lien holder from recovering a deficiency judgment after the senior lien holder had foreclosed on the property, leaving the junior lien holder with no recovery. See Brown, 259 P.2d at 427-28. The junior lien holder had argued that "there cannot be a deficiency if there was no security to sell because it presupposes a partial satisfaction of the debt by a sale which exhausts the security." Id. at 426. The court rejected her argument, however, noting that a deficiency may consist of the entire debt "because a deficiency is nothing more than the difference between the security and the debt." Id. at 427. The court went on to state that"[t]he purpose of the `after sale' reference in [S 580b] is that the security be exhausted and that result follows after a sale under the first trust deed." Id.
 
 
 27
 Prestige relies on Brown to argue that 580b applies, whether or not there has been a sale of the property, and whether or not there ever will be one. Brown and its progeny are inapposite because they deal with the situation of sold-out junior lienors where there was a foreclosure sale pursuant to the senior debt. See Brown, 259 P.2d 425; see also, e.g., Clay-ton Dev. Co. v. Falvey, 253 Cal. Rptr. 609 (Ct. App. 1988).[5] Unlike in Brown, however, the security in the instant case has not been exhausted by a sale pursuant to a senior debt. We therefore hold that 580b's prohibition of a deficiency judgment does not apply.
 
 
 28
 III. Did East Bay timely file a proof of claim?
 
 
 29
 East Bay filed a proof of claim for its unsecured debt on February 28, 1997, after the bankruptcy court granted partial summary judgment in favor of Prestige, finding that East Bay had waived its security interest.[6] The bankruptcy court and the district court found that this claim was timely under Bankr. R. 3002(c)(3) and 3003(c)(3). See Prestige II, 223 B.R. at 208.
 
 
 30
 Rule 3003(c)(3) requires the bankruptcy court to fix the time within which a proof of claim may be filed. Notwithstanding the expiration of such time, however, a proof of claim may be filed under the conditions stated in, inter alia, Rule 3002(c)(3), which provides in part:
 
 
 31
 An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property.
 
 
 32
 Bankr. R. 3002(c)(3).[7] As the district court stated, "under Rule 3002(c)(3) a previously secured creditor who did not file a secured claim may file an unsecured claim within 30 days after a judgment avoiding the security interest becomes final." East Bay's security interest was deemed waived in the bankruptcy court's opinion filed January 29, 1997. See Prestige I, 205 B.R. at 436. The judgment did not become final until the appeal was disposed of by this court on January 11, 1999. See Prestige III, 164 F.3d 1214. East Bay's claim, filed on February 28, 1997, was therefore timely.
 
 Conclusion
 
 33
 Section 726(a) does not operate to bar East Bay from recovery on its underlying debt. Section 580b does not apply because there was no sale of the security. Finally, East Bay's claim was timely filed. We therefore affirm the order of the district court, affirming the denial of Prestige's motion for summary judgment and the overruling of Prestige's objection to East Bay's claim.
 
 
 34
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 At oral argument, East Bay contended that the district court order was not final because the issue of whether the note was a "standard" or "nonstandard" purchase money note was not decided, claiming that the bankruptcy court decided the issue whether East Bay's claim was barred by 580b based solely on an estoppel argument. East Bay further argued that the district court modified the bankruptcy court's ruling with respect to the 580b issue. We disagree, however, and find that the standard/ nonstandard issue was decided by the bankruptcy court and that that ruling was not modified by the district court.
 The bankruptcy court specifically stated several times that the note was a purchase money note, and that East Bay had admitted as much. See Prestige II, 223 B.R. at 206 & n.3. The bankruptcy court's decision was articulated in part as an estoppel holding, but turned on the fact that, because Prestige triggered the loss of East Bay's security, there has not been, and never will be, a foreclosure or sale, a holding that assumes that 508b would otherwise be applicable. See id. at 209-10. The fact that the bankruptcy court decided the 580b issue is relevant because 580b only applies to "standard" purchase money notes; if it was not a standard purchase money note, 580b would not have been an issue at all. The bankruptcy court's analysis of the 580b issue thus implicitly concluded that the note was a standard purchase money note. The district court, in turn, decided the issue solely on the fact of no sale, again necessarily deciding that 580b would otherwise apply.
 Moreover, the district court's order did not modify the bankruptcy court's ruling. The district court's comment to which East Bay referred at oral argument merely stated that the bankruptcy court had probably already concluded that the note was a standard purchase money note, but that if it had not so concluded, the issue could be resolved in further proceedings. Since we have now determined that the bankruptcy court did so conclude, the district court's comment is of no moment. Finally, although East Bay stated at oral argument that the "standard" purchase money issue is being appealed in the adversary proceeding, it presented no evidence in response to our questioning, nor is there any in the record, that the issue is still unresolved.
 
 
 [2]
 Upon review of the record, it appears that Prestige did not raise this argument below. We generally will not consider an argument raised for the first time on appeal, absent exceptional circumstances. See Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.), 25 F.3d 728, 731 (9th Cir. 1994); Briggs v. Kent (In re Professional Inv. Properties of Am.), 955 F.2d 623, 625 (9th Cir. 1992). One such circumstance is when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed. See Sulmeyer, 25 F.3d at 731; Briggs, 955 F.2d at 625. The argument raised by Prestige, even though not raised below, is purely one of law, and the record has been fully developed. We thus choose to consider this argument. See Sulmeyer, 25 F.3d at 731; Briggs, 955 F.2d at 625.
 
 
 [3]
 Although East Bay attached Brassfield's personal assets, it later released them from attachment.
 
 
 [4]
 In addition, East Bay itself described the debt as "purchase money financing" in its objection to Prestige's use of cash collateral in Prestige's bankruptcy proceedings.
 
 
 [5]
 There is a line of cases relying on Brown, holding that a prior sale is not required in order to invoke the protection ofS 580b. See, e.g., Frangipani v. Boecker, 75 Cal. Rptr. 2d 407, 410 (Ct. App. 1998) (holding that the sale of the property subject to a deed of trust was not required in order to invoke the protection of 580b); Venable v. Harmon, 43 Cal. Rptr. 490, 493 (Dist. Ct. App. 1965) (holding that a deficiency judgment was barred by 580b, stating that "the fact that there has not been a prior sale is of no moment"); see also Hersch & Co. v. C&W Manhattan Assocs., 700 F.2d 476, 478 (9th Cir. 1983) (discussing Venable and stating that "it is controlling authority that 580b applies notwithstanding the absence of a prior sale"). Unlike Venable, Hersch, and similar cases, however, East Bay no longer has any right to proceed against its security, and the debt is its only recourse. The cases holding that a prior sale is not required under 580b rely in their reasoning on the policy that a creditor holding a purchase money note must look to the security; the assumption, therefore, is that the creditor still holds the security and that a later sale to satisfy some or all of the debt is still a possibility. See, e.g., Bank of Sonoma County v. Dorries, 230 Cal. Rptr. 459, 460-61 (Ct. App. 1986) (lender still had option of repossessing and selling mobile home); Venable, 43 Cal. Rptr. at 493 (vendor still held title to the property and so could "call[ ] upon" the land to satisfy the debt). By contrast, in the instant case, East Bay can no longer institute a sale of the property to satisfy any of the debt.
 
 
 [6]
 East Bay also argues that it earlier filed an informal proof of claim. We need not address this issue because we find that East Bay's formal proof of claim was timely.
 
 
 [7]
 Rule 3002 is made applicable to Chapter 11 cases, such as Prestige's, by Rule 3003(c)(3).